UNITED STATES of America,
Plaintiff-Appellee,

v.

Richard A. JACKSON,
Defendant-Appellant.

No. 85–1399
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Feb. 3, 1986.

Partial Publication.

Rehearing and Rehearing En Banc
Denied March 11, 1986.

Burgain Hayes (Court-appointed), Austin, Tex., for defendant-appellant.

Helen M. Eversberg, U.S. Atty., Sidney Powell, Asst. U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, WILLIAMS and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

Appellant, Richard Jackson, is an inmate in Unit 1 at the federal prison at Bastrop, Texas. So also is John Hay who is not an appellant, but who was charged with associated criminal conduct in the events which occurred in this case. Jackson and Hay were charged in a five count indictment with possession of a controlled substance [marihuana] in violation of 21 U.S.C. § 844(a) (Counts One and Two). In addition, Hay was charged with destruction of property to prevent seizure, 18 U.S.C. § 2232 (Count Three), and Jackson was charged with destruction of seized property, 18 U.S.C. § 2233 (Count Four) and assaulting a federal officer, 18 U.S.C. § 111 (Count Five). After a jury trial, a mistrial was declared on the possession charges against each accused since the jury could not reach a verdict. Hay was found not guilty of the preventing seizure charge. Jackson was found guilty on both the destruction of seized property and assault charges. Judgment was entered on the verdicts, and Jackson's notice of appeal is timely.

The events which gave rise to these charges occurred at the Bastrop facility on March 1, 1984. In the early afternoon, Daryl Fachgo Mendez, the only guard on duty in Unit 1, encountered Jackson as she started her rounds. Mendez became suspicious when Jackson talked loudly to her and tried to block her way. She then entered cell number 1802 with Jackson. Inside the cell, Mendez saw Hay seated at a desk with a green leafy substance on the desk. After gathering the substance, which she testified she recognized as marihuana, Mendez wrapped it in a washcloth. She then locked Hay in the cell, and took Jackson back to her office.

While Mendez put in a call for assistance, Jackson grabbed the cloth with the substance and ran out of the office. Mendez followed Jackson into another cell. As she entered the cell, she saw Jackson starting to empty the contents of the washcloth into the toilet. Mendez then tried to grab the

washcloth from Jackson, but Jackson pushed her back into the door. She tried to control Jackson, but Jackson resisted by striking her. Mendez gained control of Jackson, but the substance in the washcloth had already been flushed down the toilet. Jackson was then placed in the prison lockup. Almost four months elapsed after these events before the charges were filed against Jackson and Hay.

*Speedy Trial*

The Speedy Trial Act provides that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested." 18 U.S.C. § 3161(b). A late indictment "shall be dismissed" either with or without prejudice. 18 U.S.C. § 3162(a). Jackson argues that he was "arrested" within the meaning of the statute by being placed in the prison lockup on March 1. Since the indictment against him was not returned until June 26, more than thirty days later, the indictment against him should have been dismissed.

We first point out that Jackson did not raise the issue in the trial court, *see United States v. Amuny*, 767 F.2d 1113, 1121 (5th Cir.1985) ("[W]e usually will not entertain a claim raised for the first time on appeal."). But, in any event, we conclude that his claim is without merit. The key question raised by Jackson's claim is whether prison lockup is an "arrest" for the purposes of the Act. Jackson vigorously asserts that the history of the Act shows that prison segregation is an arrest. Any other decision would, Jackson contends, "emasculat[e]" the Act. Apparently this issue has never been resolved by any federal circuit court. An examination of the Act shows clearly, however, that prison segregation is not considered an arrest under the Act just as it is not considered an arrest in the law generally.

The Speedy Trial Act is not at war with the Sixth Amendment. Its purpose is to implement the Sixth Amendment speedy trial right. *United States v. MacDonald*, 456 U.S. 1, 7 n. 7, 102 S.Ct. 1497, 1501 n. 7, 71 L.Ed.2d 696 (1982); *Amuny*, 767 F.2d at 1120; *United States v. Janik*, 723 F.2d 537 (7th Cir.1983). Since it is clear that the Act is in implementation of the Sixth Amendment right, cases defining the Sixth Amendment right provide us with the interpretative thrust of the statute. Thus we have held: "[C]onfinement in administrative [*i.e.*, prison] segregation is not an 'arrest' or an 'accusal' for sixth amendment purposes." *United States v. Blevins*, 593 F.2d 646, 647 (5th Cir.1979); *see also United States v. Daniels*, 698 F.2d 221 (4th Cir.1983). Courts have applied the "accusal" principle by holding that an arrest triggering the statutory time limit occurs only where the person is "charged with an offense," and that charge is the reason for the arrest. *United States v. Solomon*, 679 F.2d 1246, 1251 (8th Cir.1982). See the discussion in *United States v. Varella*, 692 F.2d 1352, 1357 (11th Cir.1983).

It must be concluded, therefore, that prison segregation is not an "arrest" as defined in the Act. In this case, Jackson was already confined to prison under sentence for another offense. His administrative segregation after the incident that triggered this case can easily be justified on general security grounds and cannot be said to be an "arrest". Administrative segregation is often carried out for disciplinary and security purposes to which "arrest" is irrelevant. *Wilkerson v. Maggio*, 703 F.2d 909, 911 (5th Cir.1983). Appellant's claim that the Speedy Trial Act was violated is without merit.

(The remainder of the opinion is not printed in compliance with Local Rule 47.5: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession.")

AFFIRMED.